IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MELVIN W. KING                                                                   PLAINTIFF

V.                                NO. 4:04CV00588 JWC

JO ANNE B. BARNHART,                                    DEFENDANT
Commissioner, Social
Security Administration

## MEMORANDUM OPINION AND ORDER

Plaintiff, Melvin King, appeals from the denial of his claim for supplemental security income and disability insurance benefits. The decision of the Administrative Law Judge (ALJ) has become the final decision of the Commissioner. The issue in this case is whether Plaintiff was disabled, within the meaning of the Social Security Act, between his alleged onset date, January 22, 2002, and as of February 17, 2004, the date of the Commissioner's final decision. For the reasons that follow, the Court affirms the Commissioner's decision that Plaintiff was not disabled during that time period.

Judicial review of the Commissioner's denial of benefits examines whether the decision is based on legal error, and whether the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Brown v. Barnhart, 390 F.3d 535, 538 (8th Cir. 2004). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). If it is possible to draw two inconsistent conclusions from the evidence and one of these conclusions represents the Commissioner's findings, the Commissioner's decision must be affirmed. Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004).

Plaintiff was born on August 12, 1961, has a high school equivalent education, and has past work as a yard keeper, bus repairer, and factory worker. (Tr. 70, 109, 112-16, 313, 318-20.)  In his applications and at the hearing before the ALJ in September 2003, he alleged disability since his onset date due to problems with his right wrist, shoulder, neck, arms, legs, lower back, hips and elbows, as well as a broken nose, a steel plate in his left ankle, seizures, depression, and hand numbness and cramping. (Tr. 95, 103, 119, 120, 122-23, 314-17, 319-22, 324-27.)

A claimant is disabled, within the meaning of the Social Security statutes and regulations, if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The regulations provide a five-step process to determine whether a claimant is disabled.  See 20 C.F.R. § 404.1520, § 416.920; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  Basically, those procedures require the ALJ to take into account whether a claimant is working, whether the claimant's physical or mental impairments are severe, whether the impairments meet or equal an impairment listed in the regulations, whether the impairments prevent a resumption of work done in the past, and whether they preclude any other type of work.  Id.

Here, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. The ALJ next determined, at step two, that Plaintiff suffered from the following severe impairments: degenerative cervical spondylosis with bony spurring and mild left foraminal narrowing in his cervical spine; disc bulging in his lumbar spine; adjustment disorder with depressed mood; borderline intellectual functioning;

seizures; and status-post open reduction and internal fixation of right femoral neck and right greater trochanteric fracture.[1] The ALJ found that none of his impairments, singularly or in combination, equaled a step-three listed impairment as contained in the regulations. At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform a significant range of light work but was unable to perform any of his past work. At step five, after referring to the medical-vocational guidelines and a vocational expert's responses to interrogatories, the ALJ found that there were a significant number of jobs in the national economy which Plaintiff could perform. The ALJ thus concluded that Plaintiff was not disabled. (Tr. 14, 23-25.)

### **Non-Severe Impairments**

Plaintiff first asserts that he suffers from a number of other disabling impairments which are supported by the medical evidence, including pain in his elbows and right wrist, numbness in his hands, a steel plate in his left ankle, and a broken nose. The Court has construed this as an argument that the ALJ erroneously determined that these conditions were not "severe" impairments within the meaning of the Social Security Act, at step two of the sequential evaluation. (See Tr. 14-15.)

To qualify as severe, an impairment must "significantly limit [a claimant's] physical or mental ability to do basic work activities," which are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521, 416.921. An impairment or

---

[1] The femoral neck is the upper part of the thigh bone (femur). The greater trochanter is a bony protrusion located at the proximal (near) and lateral (outside) part of the shaft of the femur. See http://www.medterms.com.

3

combination of impairments is not severe if it would have no more than a minimal effect on the claimant's ability to work. Simmons v. Massanari, 264 F.3d 751, 755 (8th Cir. 2001).

As noted by the ALJ, Plaintiff experienced some difficulties with his upper extremities approximately ten years earlier and underwent surgery on both elbows (for lateral epicondylitis[2]) and his right wrist (to remove a ganglion cyst). However, no medical records past early 1994 reflect any impairment or functional restriction in his elbows, wrists or hands. (Tr. 141-90.) A neurological evaluation on March 21, 2002, showed normal bulk and tone in his upper and lower extremities and 5/5 strength in both extremities with no abnormal movements. Reflexes were +2/+4 at the biceps, triceps, and brachioradialis (forearm muscle that acts to flex the elbow) bilaterally, with no abnormalities noted. No sensory abnormalities were observed. (Tr. 203, 279.) A consultative orthopedic evaluation on December 19, 2002, makes no mention of any musculoskeletal restrictions or limitations in these areas, nor were any reported by Plaintiff. (Tr. 262.) The record also shows that, following his surgeries, he was released to return to full duty, (Tr. 145), and he continued to work for a number of years. This indicates that any residual problems did not significantly diminish his ability to work. See Goff v. Barnhart, No. 04-3337, 2005 WL 2086753, *5-*6 (8th Cir. Aug. 31, 2005) ("Working generally demonstrates an ability to perform a substantial gainful activity.").

While Plaintiff sustained a nasal fracture when he fell out of a tree on August 7, 2002, the record contains no evidence that he has experienced any continuing difficulties

---

[2]Commonly called "tennis elbow," this is an injury to the tendon that is attached to the outer part of the elbow, and it is caused by repetitive twisting of the wrist or forearm which causes irritation and inflammation of the extensor tendon. See http://www.medterms.com.

or work-related functional restrictions. (Tr. 244.) Furthermore, there is no objective medical evidence to support any problems or limitations related to his left ankle. The neurological and orthopedic exams reflected no reports or observations of abnormalities in reflexes of the ankles, normal movement and strength in the lower extremities, and no abnormality in heel, toe and tandem walking. (Tr. 203, 261, 279.)

Therefore, substantial evidence supports the ALJ's determination that the alleged conditions related to Plaintiff's elbows, wrist, nose and hands did not significantly limit his ability to perform any work-related activities and thus were not severe.

### Residual Functional Capacity/Credibility

Plaintiff's second claim appears to be that the ALJ should have found Plaintiff to be disabled because the severe impairments noted by the ALJ are supported by the medical evidence and Plaintiff's subjective allegations are consistent with the overall record.

It is undisputed that the medical evidence supports the ALJ's finding that Plaintiff suffers from several severe impairments. However, the critical inquiry here is "what [the claimant] can still do" in a work setting despite his or her "physical and mental limitations," that is, his "residual functional capacity" (RFC). 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ bears the final responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. Id. §§ 404.1527(e)(2), 404.1545(a)(3), 416.927(e)(2), 416.945(a)(3); Eichelberger, 390 F.3d at 591. In making an RFC assessment, the ALJ must determine the claimant's credibility, as his or her

subjective complaints play a role in assessing the RFC. Ellis v. Barnhart, 392 F.3d 988, 995-96 (8th Cir. 2005).

The ALJ is in the best position to gauge credibility and is granted deference in that regard. Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). Nevertheless, before discounting a claimant's subjective complaints, the ALJ must acknowledge and consider the following factors: (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) the dosage, effectiveness and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. Eichelberger, 390 F.3d at 590 (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)). Subjective complaints of pain may be discounted if there are inconsistencies in the record as a whole. Ellis, 392 F.3d at 996.

Stating that he had considered the evidence in light of the Polaski factors and the relevant regulations and rulings, the ALJ found that Plaintiff's allegations regarding his limitations were not fully credible. In assessing Plaintiff's RFC, the ALJ also addressed the medical evidence, and the observations and opinions of the various treating and consulting physicians regarding Plaintiff's conditions and functional restrictions. (Tr. 16-21, 24.)

The ALJ first thoroughly discussed the relevant objective medical evidence. On August 7, 2002, Plaintiff fell from a tree while inebriated, sustaining a right femoral neck fracture and a right greater trochanteric fracture. (Tr. 242-51.) X-rays on September 3, 2002, showed acceptable alignment, and the doctor advised to continue non-weight bearing but to follow up in two weeks to determine if he could begin progressive weight-bearing. (Tr. 252.) There was no follow-up until December 19, 2002, when Plaintiff saw Dr. Ted Honghiran (an orthopedic surgeon) for a disability evaluation. At that time, he had

limited range of motion in the right hip and walked with a limp and used a cane, but x-rays showed that the fracture had completely healed with internal fixation in place, and the neurological exam was normal. (Tr. 259-62.) Ten months later, on October 8, 2003, Plaintiff reported no limitations related to his hip, and an examiner observed "unremarkable" gait and posture. (Tr. 281-82.)

As to Plaintiff's back, neck and shoulder pain, an MRI scan of his lumbar spine on September 27, 2001, showed minimal disc bulging at the L4-L5 and L5-S1 levels without disc protrusion or canal stenosis, and an MRI scan of his cervical spine showed some degenerative cervical spondylosis at C5-6 with some posterior bony spurring and mild left foraminal narrowing, but no canal stenosis, focal disc protrusion or abnormal signal in the cord. (Tr. 237-38.) In a neurological evaluation on March 21, 2002, he demonstrated normal bulk, tone and motor strength in his upper and lower extremities, no reflex or sensory deficits, and normal gait and station. (Tr. 203, 279.) Dr. Honghiran's orthopedic examination nine months later, on December 19, 2002, showed complete range of motion in the lumbar spine with minimal discomfort; the report does not suggest any complaints by Plaintiff regarding his cervical spine or shoulders, and no evaluation was done of those regions. (Tr. 259-62.) In October 2003, Plaintiff reported to an examiner that he was unable to work due to depression and a seizure disorder, making no mention of any back or shoulder problems. (Tr. 283.)

The ALJ noted the gaps in Plaintiff's pursuit of medical treatment for his musculoskeletal ailments, which is inconsistent with allegations of a disabling condition. See Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004) (infrequent treatment is valid basis for discounting subjective complaints). The ALJ also noted that Plaintiff's description

7

of his physical abilities on a daily basis contradicted his subjective complaints. Plaintiff reported that he was able to take care of his own personal needs, do laundry, wash dishes, change bed sheets, iron, vacuum/sweep, take out the trash, shop for groceries and clothes, wash the car, mow the lawn, rake leaves, work in the garden, run errands, and prepare meals. (Tr. 93-94.) Daily activities such as these are inconsistent with claims of disabling physical pain. Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005).

As to his seizure disorder, the record shows that Plaintiff was not compliant in taking the prescribed medication to control the disorder, nor did he follow up with a neurologist as advised. (Tr. 245, 247-48, 254.) Furthermore, an MRI scan of his brain and an EEG were normal, and a neurological examination on March 21, 2002 revealed no deficits. (Tr. 201-04, 231. 254, 278-80.) These are valid reasons for the ALJ to discount Plaintiff's allegation of a disabling seizure disorder. Kelley, 372 F.3d at 961 (absence of supporting medical evidence and failure to follow prescribed medical treatment are bases for discounting subjective complaints).

The ALJ also thoroughly discussed Plaintiff's alleged mental impairment. As pointed out by the ALJ, the medical records show that Plaintiff complained of depression to his primary care physician in January 2001, September 2001, and January 2002, and was prescribed anti-depressants and anti-anxiety medication. (Tr. 231-32, 234-35.) However, he was not referred to a mental health professional nor did he take psychotropic medication on a regular basis until October 2003, when the ALJ referred him for a consultative psychological evaluation following the administrative hearing. (Tr. 281-90, 336.) Following the evaluation by Dr. Sam Boyd, Plaintiff was diagnosed with borderline intellectual functioning and an adjustment disorder with depressed mood, and Dr. Boyd's

prognosis was that, with outpatient psychotherapy and medication management, Plaintiff's condition could improve significantly within the next twelve months. (Tr. 286.) Dr. Boyd also reported that the validity scales of Plaintiff's MMPI indicated that he was exaggerating and thus could not be interpreted as an accurate reflection of his psychological functioning. (Tr. 285.) Additionally, the record contains no evidence of significant functional restrictions in Plaintiff's daily personal activities or social behavior, and he successfully worked until January 2002 despite any intellectual deficits. (Tr. 287.)

Plaintiff attempts to excuse his failure to pursue more aggressive mental health treatment, or to take his seizure medication on a regular basis, due to financial hardship. However, there is no evidence that Plaintiff attempted to obtain low-cost mental health treatment or counseling or that he had been denied such care because of his poverty. See Goff, supra at *6 (without evidence that claimant was ever denied medical treatment due to financial reasons, failure to take medication or pursue treatment is relevant to credibility determination); Brown, 390 F.3d at 540. Furthermore, as pointed out by the ALJ, Plaintiff was able to frequently purchase alcohol, when he could have been spending that money on medication. (Tr. 19-20.) Therefore, the ALJ properly considered his failures as an indication that his conditions were not as limiting as alleged.

The ALJ also discussed the testimony of both Plaintiff and his sister, explaining his reasons for discounting their credibility. (Tr. 18, 21.)

The ALJ acknowledged the finding in 1994 that, for purposes of Arkansas' worker's compensation laws, Plaintiff had a five percent impairment rating to his left and right upper extremities. (Tr. 21, 81.) However, as he noted, a disability determination by another agency is not binding on the Social Security Administration, see 20 C.F.R. §§ 404.1504,

416.904, and these findings were ten years old and were not based on Plaintiff's current functioning and medical evidence.

Based on the record as a whole, the ALJ thus concluded that Plaintiff retained the RFC to lift/carry twenty pounds occasionally and ten pounds frequently, to sit for at least six hours in an average day, and to stand/walk for at least six hours; that he had unlimited ability to maintain his personal appearance, and good ability to follow work rules, use judgment, interact with supervisors, function independently, and understand, remember and carry out simple instructions; that he had fair ability to relate to coworkers, deal with the public, deal with work stresses, maintain attention and concentration, understand, remember and carry out detailed instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability; and that he had poor or no ability to understand, remember and carry out complex instructions. (Tr. 21.)

In making this RFC determination, the ALJ considered the relevant medical evidence and medical source opinions, properly discounted Plaintiff's subjective complaints, and appropriately incorporated functional restrictions imposed by Plaintiff's physical and mental limitations as supported by the record as a whole. Based on this RFC, along with Plaintiff's age, educational background and transferable work skills, the ALJ submitted interrogatories to a vocational expert and provided Plaintiff's counsel with an opportunity to do so as well. (Tr. 62-68, 137-40.) The vocational expert determined that a significant number of jobs existed in the regional, state and national economy that Plaintiff could perform. In light of this record, substantial evidence supports the Commissioner's decision that Plaintiff was not disabled.

## **Conclusion**

After a careful review of the evidence, the Court finds that all of Plaintiff's arguments for reversal are without merit and that the record as a whole contains substantial evidence upon which the ALJ could rely in reaching his decision.

ACCORDINGLY, the final decision of the Commissioner is **affirmed** and Plaintiff's case is **dismissed** with prejudice.

IT IS SO ORDERED this 16th day of September, 2005.

_____
UNITED STATES MAGISTRATE JUDGE